```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BLUEFIELD
```

BENNY RAY ROBERTS,

    Plaintiff,

v.                                      CIVIL ACTION NO. 1:13-23245

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

    Defendant.

### MEMORANDUM OPINION AND ORDER

    By Standing Order, this matter was referred to United States Magistrate Judge Dwane L. Tinsley for submission of findings of fact and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Whereupon, Magistrate Judge Tinsley submitted his Findings and Recommendation ("PF&R") to the court on August 22, 2014, in which he recommended that this court grant defendant's motion for summary judgment, deny plaintiff's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, and dismiss this matter from the court's docket.

    In accordance with the provisions of 28 U.S.C. § 636(b), plaintiff was allotted fourteen days plus three mailing days in which to file any objections to Magistrate Judge Tinsley's Findings and Recommendations.  By Order entered on September 4, 2014, the court granted plaintiff's motion for an extension of time to file his objections.  On September 17, 2014, plaintiff filed timely objections to the magistrate judge's Findings and Recommendation.  With regard to plaintiff's objections, this court has conducted a de novo review of the record.

Under 28 U.S.C. § 2254, Roberts is entitled to federal habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that when the issues raised in a § 2254 petition were raised and considered on the merits in State court habeas proceedings, federal habeas relief is unavailable unless the State court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal habeas Court may grant habeas relief "if the State court arrives at a conclusion opposite to that reached by this Court on a question of law or if the State court decides a case differently than this Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. 362, 412-13 (2000). A federal habeas court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. <u>Id</u>. In determining whether the State court's decision was contrary to, or was an unreasonable application of, Supreme Court precedent,

2

all factual determinations by the State court are entitled to a presumption of correctness. See 28 U.S.C. § 2254(e).

A state court's decision is "contrary to" clearly established federal law when it "applies a rule that contradicts the governing law set forth" by the United States Supreme Court, or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams, 529 U.S. at 405-06. A state court's decision involves an "unreasonable application" of clearly established federal law under § 2254(d)(1) "if the state court identifies the correct governing legal rule from . . . [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. "The state court's application of clearly established federal law must be 'objectively unreasonable,' and 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Robinson v. Polk, 438 F.3d 350, 355 (4th Cir. 2006) (quoting Williams, 529 U.S. at 411). Moreover, when "assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well

reasoned." Wilson v. Ozmint, 352 F.3d 847, 855 (4th Cir. 2003) (quotation marks omitted).

Against this backdrop, the court has carefully considered plaintiff's objections and reviewed the record de novo. The court concludes that all of Roberts' objections to the PF&R are without merit. Given that Roberts' objections mirror his arguments considered and rejected by the magistrate judge, it would serve no useful purpose for the court to address each of Roberts' objections and go through the exercise of reiterating the findings of fact and conclusions which are already set forth in Magistrate Judge Tinsley's comprehensive and well-reasoned PF&R. Accordingly, the court OVERRULES Roberts' objections for the same reasons stated in the PF&R. The court will, however, separately address a few points raised in plaintiff's objections.

    A.    *Sufficiency of the evidence to prove felony murder*

As the Supreme Court has said, "evidence is sufficient to support a conviction whenever, `after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Parker v. Matthews, 132 S. Ct. 2148, 2153 (2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Under this "deferential federal standard," a federal habeas court should not "unduly impinge[] on the jury's role as factfinder." Coleman v. Johnson, 132 S. Ct. 2060, 2064 (2012).

4

> Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts. This deferential standard does not permit the type of fine-grained factual parsing in which the Court of Appeals engaged.
>
> * * *
>
> The jury in this case was convinced, and the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA.

Id. at 2064-65.

On October 10, 2008, a jury found Roberts guilty of felony murder in connection with the death of Losey Lee Bennett. Roberts contends that he was improperly convicted of felony murder because the victim's death was not due to any act on his part but, rather, resulted from the victim being removed from life support some days later. Therefore, the petitioner asserts that the victim did not die during the commission of either a robbery or a breaking and entering.

In West Virginia, the elements to sustain a conviction for felony murder are: "(1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt." State v. Williams,

5

305 S.E.2d 251, 267 (W. Va. 1983)(emphasis added). In <u>State v. Jenkins</u>, the Supreme Court of Appeals of West Virginia upheld a conviction of felony murder where the victim was removed from life support. 229 W. Va. 415 (2012), The <u>Jenkins</u> Court held that "it is sufficient if the initial wound caused the death indirectly through a chain of natural causes." <u>Id.</u> at 262; <u>see also</u> <u>State v. Durham</u>, 195 S.E.2d 144, 149 (W. Va. 1973) ("It is sufficient if the initial wound caused the death through a chain of natural causes.").

At the trial, Dr. Zia Sabet, a Deputy Chief Medical Examiner with the State of West Virginia, testified about the victim's cause of death. <u>See</u> Exhibit 20 at 505-16. According to her:

> Q: What was the mechanism, what caused the death? What was the mechanism of death?
>
> A: If you have bleeding. . . bleeding alone, even without fractures, sometimes with shaking baby we have movement of the head without any fracture but you have subdural subarachnoid hemorrhage, because if you have enough blood it pushes the brain, the brain there's no place for the brain to try to compound say, or try to escape from this pressure so it pushes the base of the brain and causes herniation. Brain tissue goes

6

>  to the host when the lower part or base of the skull. That's called a brain herniation. And that is the cause of this.
>
> Q: That is the mechanism of death. Do you have an opinion as to the cause of death, uh, as listed in your report?
>
> A: Multiple blunt force injuries. Because as I mentioned we have four impact[s] to the head with fractures, subarachnoid and subdural hemorrhage. And these are cause of permeation of the base of the brain. As you know the respiration and heart beat centers on the medulla, if you have pressure on that area it stops. So we have enough pressure on that area that caused death.
>
> Q: In your opinion, was the manner of death a homicide?
>
> A: Yes. When you have that much injury, the cause of death is homicide.

Id. at 514-15. Furthermore, numerous courts have concluded that removal of a victim from life support is not an intervening cause of death sufficient to relieve one from criminal liability. See, e.g., Anderson v. Ignacio, No. 3:98-cv-00655-ECR-VPC, 2011 WL 294388, *4-5 (D. Nev. Jan. 26, 2011) (holding that victim's

removal from life support did not relieve defendant of criminal responsibility); Ray v. Commonwealth of Kentucky, No. 2005-SC-0241-MR, 2006 WL 2708537, *1 (Ky. Sept. 21, 2006) ("As it has been held by almost all, if not all, other jurisdictions that have been presented with this questions, the lawful decision to withdraw artificial life support from a loved one is simply not an independent, intervening cause of death sufficient to relieve one of causal liability. . . ."); State v. Pelham, 176 N.J. 448, 824 A.2d 1082, 1090-91 (N.J. 2003) (holding that removal of life support is not an independent, intervening cause of death and citing to numerous jurisdictions that have held similarly); Carrigg v. State, 696 N.E.2d 392, 396 (Ind. App. 1998) ("In order for an intervening cause to break the chain of criminal responsibility, the intervening cause must be so extraordinary that it would be unfair to hold the defendant responsible for the actual result."); State v. Yates, 64 Wash. App. 345, 824 P.2d 519, 523 (Wash. App. 1992) ("When life support is removed, the cause of death is not the removal, but whatever agency generated the need for the life support in the first instance.").

The court finds that a reasonable trier of fact could have found beyond a reasonable doubt that the victim's death resulted from the initial injuries he received from the beating on September 19, 2007, and under Jenkins and Durham, it is enough if the initial wound caused the death indirectly through a chain of natural causes.

8

As to Roberts' claim that there was insufficient evidence to support his conviction for felony murder because the State did not establish each of the elements of the underlying felony, that argument also fails. Magistrate Judge Tinsley noted:

> The evidence presented at trial was sufficient to establish that the petitioner was involved in the taking of property, money or a thing of value from Losey Lee Bennett by striking or beating him with the intent to deprive him of it permanently. Even if the petitioner was not the person who struck Bennett, based upon the evidence as a whole, he may still be found guilty of robbery as an aider and abettor or an accessory - a principal in the second degree - and the jury was properly instructed on those roles. (ECF No. 12, Ex. 19 at 962-963).
>
> As noted by the state habeas court, "the instruction for robbery was properly given because the evidence at trial included testimony that Losey Lee Bennett had been hit in the head with a board and was beaten prior to his wallet being taken." (ECF No. 12, Ex. 11 at 43). In the light most favorable to the State, a rational trier of fact could have found the essential elements of first degree robbery beyond a reasonable doubt based upon those facts. Furthermore, because Bennett died as a result of injuries he sustained in the course of this altercation, the evidence also supported the jury's finding of guilt on the charge of felony murder.

PF&R at 43. Magistrate Judge Tinsley also concluded that there was sufficient evidence to support Roberts' conviction for felony murder based on an underlying felony of breaking and entering and attempted breaking and entering. See PF&R at 55.

The state court determined that the prosecution met its burden to produce evidence sufficient for "any rational trier of

fact" to find "the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. Viewed in the light most favorable to the prosecution, the evidence showed Roberts was involved in the taking of property, money or a thing of value from Losey Lee Bennett by striking or beating him with the intent to deprive him of it permanently. Even if the plaintiff was not the person who struck Bennett, based upon the evidence as a whole, he may still be found guilty of robbery as an aider and abettor or an accessory - a principal in the second degree - and the jury was properly instructed on those roles.

   To the extent the evidence conflicted, a reviewing court on habeas "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." McDaniel v. Brown, 558 U.S. 120, 133, (2010) (quoting Jackson, 443 U.S. at 326). The state court's ruling that sufficient evidence supported Roberts' conviction for aiding and abetting felony murder was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

   B. *Denial of Motion to Change Venue*

   Plaintiff next objects to Magistrate Judge Tinsley's finding that the state court's denial of his motion for a change of venue did not entitle him to habeas relief. "A change of venue

is required as a matter of constitutional law only when the jury pool is tainted `by so huge a wave of public passion' that the impaneling of an impartial jury is impossible." Mu'min v. Pruett, 125 F.3d 192, 199 (4th Cir. 1997) (citing Irvin v. Dowd, 366 U.S. 717, 728 (1961)), cert. denied, 522 U.S. 978 (1997). "Matters of change of venue are committed to the sound discretion of the trial court . . . ." Tuggle v. Thompson, 57 F.3d 1356, 1364 (4th Cir. 1995), vacated and remanded on other grounds, 516 U.S. 10 (1995).

Plaintiff filed a motion for a change of venue in the underlying criminal case, citing "prejudice in the community" and Roberts' low probability of receiving a fair trial in Mercer County. Ex. 17 at 172-75. On September 25, 2008, a hearing was held on the motion. See id. at 149-81; Exhibit 12. In support of his motion, defendant offered an opinion survey of potential jurors compiled by Don Richardson and Associates. See Exhibit 12 at 13. Mr. Richardson also testified at the motions hearing. See id.; Exhibit 17 at 148-81.

In its Order denying the motion for change of venue, the trial court noted:

> In support of his motion for change of venue, the defendant presented the testimony and written report of Don R. Richardson. The Court will not go into the background of this witness but the Court does recognize him as an expert in the area of opinion research. Mr. Richardson testified that he completed a telephone survey of Mercer County residents on September 3, 2008. This survey consisted of randomly telephoning 207 "potential" jurors in Mercer County and asking these people questions about the media reports of this case and about the defendant.[1]

---

[1] Mr. Richardson himself testified that he had no opinion on whether the media coverage in the case was prejudicial.

11

> When given a description of the media accounts of the case, of the 207 people contacted, 61%, or 127 people, had heard about the case. Only 48 people had formed an opinion in the matter, 22 of which held negative opinions of the defendant. In other words, of the total number of people contacted, only 23% had formed an opinion. Less than 11% of the people contacted had formed a negative opinion of the defendant.
>
> Of the 207 people contacted, 109 or 53% felt that the defendant could receive a fair trial in Mercer County. 31 people, 15% of the total contacted, opined that the defendant could not receive a fair trial. The remaining 67 people contacted, or 32%, did not know express [sic] an opinion of a fair trial.
>
> \* \* \*
>
> Based upon the report of Mr. Richardson, this Court cannot find that such a hostile sentiment exists against the defendant. The Court notes that a majority of those interviewed had heard about the case.
>
> \* \* \*
>
> In this survey, of those who had some prior knowledge, the overwhelming portion had not formed any opinion about the case. With those forming an opinion, less held a negative opinion of the defendant than those who did not.

Exhibit 9 at 13-15.

The court notes that the trial court conducted an extensive voir dire of the jury panel as to pre-existing prejudice, bias and the ability to give the defendant a fair and

---

> Q: Does your survey. . . in your survey do you have any opinion as to whether local news, tv news, or the newspapers had skewed or was [sic] unfair in their coverage of this matter?
>
> A: I have no opinion on that whatsoever.

Exhibit 17 at 170.

12

impartial trial according to the evidence. See Exhibit 19 at 1-93. Of the venire, only seven people, prospective jurors 6, 14, 17, 21, 25, 26, and 35, indicated that they had prior knowledge of the case. See id. at Exhibit 19 at 43. Defense counsel was permitted to personally question prospective jurors who indicated that they had previously heard about the case. See id. at 52-77. Potential jurors who stated they were positive that they could not be fair and impartial were discharged. See id. All of the jurors ultimately chosen stated that they could put aside any information they had been exposed to in the past and decide the case on the law and evidence alone. See id.

As to plaintiff's specific objections concerning jurors Carol Root and Charlotte Ann Russ, those are also without merit. Ms. Root, a former probation officer who indicated that she knew the prosecuting attorney in his official capacity some seventeen years earlier, unequivocally stated that her former professional relationship with the prosecuting attorney would in no way affect her ability to give defendant a fair trial. See id. at 32-33.

> Q: Would that cause you to give my arguments any more weight or less weight?
>
> A: No.
>
> Q: Witnesses that I put on any more or less weight?
>
> A: No.
>
> Q: Could you be fair?
>
> A: Yes.

Id. at 33.

Likewise, Ms. Russ, who indicated that she had watched television reports on the underlying crime and read about it in

13

the newspaper, swore under oath that she would be able to put this out of her mind.

> Q: Ms. Russ, it's my understanding, uh, that when we ask [sic] if you knew anything about this case given all the questions that I asked here today, you said you do know something about this case, is that correct?
>
> A: Yes.
>
> Q: Can you tell us what you do know about this case. [sic].
>
> A: The only thing I know is that I saw it reported on the television news on WVVA and I also read about it in Bluefield Daily Telegraph.
>
> Q: Would have [sic] that additional information leave any bias in your mind where you could not sit with an open mind and render a fair and honest verdict in this case?
>
> A: No, sir.
>
> * * *
>
> Q: Alright. Ms. Russ, despite what you've seen on TV or heard, read in the paper, do you understand that the evidence that you have to base your verdict on has to come here in the trial. [sic].
>
> A: Exactly.
>
> Q: So can you disregard what you read or what you've heard and base your evidence solely, er, base your verdict, excuse me, on the evidence that you hear in this courtroom?
>
> A: Yes. And the only thing that I can tell you is that I read about the crime and saw the picture of the person that was arrested. I didn't read any details.

Ex. 19 at 57-59.

There is no requirement that qualified jurors be totally ignorant of the facts and issues involved in a case. See Murphy v. Florida, 421 U.S. 794, 799-80 (1975). As the Supreme Court has noted:

14

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.  It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Irvin v. Dowd, 366 U.S. 717, 723 (1961).  Furthermore, there is a presumption of impartiality afforded to jurors.  Poynter v. Ratcliff, 874 F.2d 219, 221 (4th Cir. 1989); Wells v. Murray, 831 F.2d 468, 472 (4th Cir. 1987).

It is clear that the trial court gave a great deal of thought and consideration to plaintiff's motion to change venue.  It is equally clear that during the voir dire process the court took great pains to insure that an impartial jury was chosen.  Roberts has presented no convincing evidence that the trial judge abused his discretion in not changing the venue.  Given the considerable deference afforded a trial court's determination of jury impartiality, see Patton v. Yount, 467 U.S. 1025, 1031 (1984), the court can find no error in denial of the motion to change venue.  Therefore, plaintiff's objection is OVERRULED.

Magistrate Judge Tinsley's findings are thorough, well-reasoned and set forth in detail in his 70-page PF&R.  For the reasons expressed both herein and in the PF&R, the Court overrules plaintiff's objections and adopts the findings of Magistrate Judge Tinsley in their entirety as follows:

    (1)    Defendant's motion for summary judgment is **GRANTED**;

    (2)    Plaintiff's petition for a writ of habeas corpus is **DENIED**; and

(3) This matter is **DISMISSED** from the court's docket.

Additionally, the court has considered whether to grant a certificate of appealability. See 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001). The court concludes that the governing standard is not satisfied in this instance. Accordingly, the court DENIES a certificate of appealability.

The Clerk is further directed to send copies of this Memorandum Opinion and Order to counsel of record and to plaintiff, pro se.

IT IS SO ORDERED this 30th day of September, 2014

ENTER:

*David A. Faber* (signature)

David A. Faber
Senior United States District Judge